**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
MARTINSBURG**

**UNITED STATES OF AMERICA,**

    Plaintiff,

v.                                        **CRIMINAL ACTION NO.: 3:15-CR-18-1
(GROH)**

**LATEEF FISHER, a/k/a "Apple,"**

    Defendant.

**MEMORANDUM OPINION AND ORDER DENYING DEFENDANT FISHER'S MOTION
FOR POST-VERDICT JUDGMENT OF ACQUITTAL AND MOTION FOR NEW TRIAL**

On May 18, 2016, Defendant Lateef Fisher was convicted by a jury of aiding and abetting the distribution of heroin resulting in death or serious bodily injury, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C). The Defendant now moves for a post-verdict judgment of acquittal or new trial, arguing that the United States failed to present evidence in support of a required element of the offense charged in the indictment: namely, that the distribution of heroin occurred in the Northern District of West Virginia. Because the Government presented sufficient evidence for a reasonable jury to find that the June 20, 2014 distribution to Joshua Welch occurred in the Northern District of West Virginia, the Court **ORDERS** that the Defendant's motions are **DENIED**.

**I. Applicable Law**

Pursuant to Federal Rule of Criminal Procedure 29, after the jury returns a guilty verdict in a criminal case, the court has the discretion to "set aside the verdict and enter an acquittal." Fed. R. Crim. P. 29(c)(2). In determining whether a guilty verdict should

be set aside, the court "must consider circumstantial as well as direct evidence, and allow the government the benefit of all reasonable inferences from the facts proven to those sought to be established." United States v. Tresvant, 677 F.2d 1018, 1021 (4th Cir. 1982) (citations omitted). Importantly, the court is prohibited from weighing the evidence or evaluating the credibility of witnesses when deciding a motion for acquittal. Burks v. United States, 437 U.S. 1, 16 (1978). If the court finds that "any rational trier of facts could have found the defendant guilty beyond a reasonable doubt," then the motion for acquittal must be denied and the verdict upheld. Tresvant, 677 U.S. at 1021 (citations omitted); see also Burks, 437 U.S. at 17 (stating that a jury verdict must be sustained "if there is substantial evidence, viewed in the light most favorable to the Government, to uphold the jury's decision" (citing Glasser v. United States, 315 U.S. 60, 80 (1942))). A motion for acquittal based upon insufficient evidence may be granted only in "rare case[s] where the prosecution's failure is clear." United States v. Beidler, 110 F.3d 1064, 1067 (4th Cir. 1997) (internal quotations omitted) (quoting Burks, 437 U.S. at 17).

Pursuant to Federal Rule of Criminal Procedure 33, upon motion by the defendant, "the court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). When a Rule 33 motion "attacks the weight of the evidence, the court's authority is much broader than when it is deciding a motion [under Rule 29]." United States v. Arrington, 757 F.2d 1484, 1485 (4th Cir. 1985). Unlike review of a Rule 29 motion, when determining a motion pursuant to Rule 33, the court need not view the evidence in the light most favorable to the government and it may consider witness credibility. See id. Nevertheless, vacatur should be exercised sparingly and a Rule 33 motion "should be granted only when the evidence weighs heavily against the

verdict." Id. at 1486 (citing 3 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 353 (1982)).

## II. Relevant Evidence Presented During Trial

On June 21, 2014, Joshua Welch died from an overdose of heroin. Deputy Adam Boothby of the Berkeley County Sheriff's Office responded to the call regarding Welch's death. Tr. Vol. I at 115:10-24. During trial, Deputy Boothby testified that on June 21, 2014, he responded to the scene "off of Creasey Way, close to Woodbury Avenue." See Tr. Vol. I at 117:9-11. Crystal Shank, a resident of Martinsburg, West Virginia, and friend of Welch, acknowledged that Welch died in her apartment. Tr. Vol. I at 143:9-10; Govt.'s Ex. 12 at 1.

On the night of June 20, 2014—the night before Welch's death—John Sanders[1] and Welch met Christopher Heinbaugh at a Taco Bell in Hagerstown, Maryland. Tr. Vol. II at 8:20-11:2. Heinbaugh testified that he had previously used heroin with both Sanders and Welch approximately one hundred times or more. Tr. Vol. II at 5:25-6:7, 8:7-11. He also testified that when he used heroin with Sanders the two would typically "shoot it" in the car or, if only "a short distance" from the purchase location, they would "go back to the house." See Tr. Vol. II at 7:14-24. Heinbaugh indicated that heroin was Sanders' and Welch's preferred drug. See Tr. Vol. II at 14:16-15:1. Heinbaugh met Sanders and Welch at the Taco Bell in order to give Sanders money for cocaine. Tr. Vol. II at 8:20-11:12. He testified that when he met Sanders and Welch at Taco Bell, Sanders looked "dope sick" from heroin withdrawal. Tr. Vol. II at 11:3-7. Heinbaugh left Taco Bell after giving Sanders $140.00, but he never received any cocaine. Tr. Vol. II at 11:8-12.

---

[1] John Sanders was indicted as a codefendant in this case. ECF No. 1. However, he pled guilty to an information in a related criminal case before trial. See ECF No. 10 in 3:15-CR-49.

3

Prior and subsequent to the meeting at Taco Bell, Sanders was using Welch's phone to exchange text messages with phone number 240-469-9448. Govt.'s Ex. 1b at 152-54. During trial, Patrolman Terry Hose of the Hagerstown City Police Department testified that one of Defendant Fisher's cell phones was registered with that number. Tr. Vol. I at 221:21-225:8. Phone records presented during trial demonstrated that on June 20, 2014, Sanders began contacting the 240-469-9448 number from Welch's phone at around 10:00 p.m. Govt.'s Ex. 1b at 152; Tr. Vol. I at 259:6-15. Sanders used the words "math" and "slices" in text messages to the 240-469-9448 number. Govt.'s Ex. 1b at 152-53; <u>see also</u> Tr. Vol. I at 258:18-261:14. Patrolman Hose testified that Fisher would use these words in reference to quantities of heroin. Tr. Vol. I at 225:9-226:7.

A few hours later, at approximately 12:50 a.m. on June 21, 2014, Sanders called and texted Heinbaugh from Welch's phone and told him that Welch "looked like [he] was dying." Tr. Vol. II at 12:17-21; <u>see also</u> Govt.'s Ex. 1b at 155-56. Later that day, Welch's body was transported to Morgantown, West Virginia, for an autopsy. Tr. Vol. I at 131:2-132:3. Two days later, Dr. Vernard Adams performed the autopsy. Tr. Vol. II at 26:25-27:7. Dr. Adams opined that the cause of Welch's death was "intoxication by heroin." Tr. Vol. II at 35:17.

### III. Discussion

As an initial matter, upon review of the trial transcript and exhibits in this case, the Court finds that, although the Government presented evidence that Welch died in an apartment located near Creasey Way and Woodbury Avenue in Martinsburg, West Virginia, it did not present evidence that the City of Martinsburg is located within the Northern District of West Virginia. However, this defect is a proper circumstance for

4

judicial notice.  See United States v. Troupe, 307 F. App'x 715, 716-17 (4th Cir. 2008) (per curiam) (finding that a district court could have taken judicial notice that Greensville County was in the Eastern District of Virginia at the close of the government's case-in-chief); see also United States v. Kelly, 535 F.3d 1229, 1235-37 (10th Cir. 2008); Weaver v. United States, 298 F.2d 496, 498-99 (5th Cir. 1962).  Therefore, this Court takes judicial notice that Creasey Way and Woodbury Avenue are streets in Martinsburg, West Virginia, which is a city located within the Northern District of West Virginia.

In support of his motions, the Defendant argues that the Government failed to present sufficient evidence during trial to prove that the June 20, 2014 distribution to Welch occurred in the Northern District of West Virginia, as alleged in the indictment.[2] Specifically, the Defendant argues that the Government "failed to present *any* testimony or evidence regarding where the distribution and use of heroin took place."  ECF Nos. 149 at 2, 150 at 2 (emphasis added).  The Defendant goes on to state, "If the United States cannot prove that the heroin was distributed in the Northern District of West Virginia, then a reasonable fact-finder must have a reasonable doubt as to these elements of the alleged offense."  ECF Nos. 149 at 2, 150 at 2.

---

[2] The indictment alleges,

> On or about June 20, 2014, at or near Martinsburg, Berkeley County, West Virginia, within the Northern District of West Virginia, and elsewhere, defendants LATEEF FISHER, a/k/a "APPLE" and JOHN SANDERS, aided and abetted by each other, did unlawfully, knowingly, intentionally, and without authority distribute a quantity of heroin, a Schedule I narcotic drug-controlled substance as defined in Title 21, United States Code, Section 812(c), Schedule I(b)(10), to a person known to the Grand Jury, and death and serious bodily injury resulted from the use of the heroin, in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(C), and Title 18, United States Code, Section 2.

ECF No. 1.

Because "venue is not a substantive element of a crime," the government "does not have to prove where the crime occurred beyond a reasonable doubt." United States v. Griley, 814 F.2d 967, 973 (4th Cir. 1987). It need only prove "by a preponderance of the evidence that the trial is in the same district as a *part* of the criminal offense."[3] Id. (emphasis added) (citing United States v. White, 611 F.2d 531, 534-36 (5th Cir. 1980)). To prove venue, direct evidence is not required; "[c]ircumstantial evidence alone may be sufficient." Id. Additionally, because some crimes continue across multiple districts or states, more than one venue may be proper. See United States v. Bowens, 224 F.3d 302, 309 (4th Cir. 2000) ("The inquiry into the place of the crime may yield more than one appropriate venue, or even a venue in which the defendant has never set foot." (internal citations omitted)); see also 18 U.S.C. § 3237(a) ("[A]ny offense against the United States begun in one district and completed in another, or committed in more than one district, may be inquired of and prosecuted in any district in which such offense was begun, continued, or completed.") For example, an individual who aids and abets a particular offense "may be prosecuted in the district in which [not he, but] the principal acted in furtherance of the substantive crime." United States v. Kibler, 667 F.2d 452, 455 (4th Cir. 1982) (first citing Hyde v. United States, 225 U.S. 347, 362-67 (1912); then citing United States v. Buckhanon, 505 F.2d 1079, 1083 (8th Cir. 1974)); see also United States v. Armetta, 191 F.3d 448, *3 (4th Cir. 1999) (per curiam) (unpublished table decision).

---

[3] During its charge to the jury, the Court instructed, in relevant part, "[I]t is not necessary to prove the exact location of the commission of an alleged offense. It is sufficient if the evidence in this trial establishes beyond a reasonable doubt that the offense was committed within the Northern District of West Virginia." ECF No. 135 at 10; Tr. Vol. II at 85. This instruction held the Government to a higher burden of proof than the required preponderance of the evidence standard, and thus it was more favorable to the Defendant. Even still, the jury returned a guilty verdict. Therefore, the Court finds that this error was harmless.

Important to the Court's venue analysis is that Fisher and Sanders were charged together as codefendants in this case. On April 7, 2015, a grand jury returned an indictment charging them with one count of aiding and abetting the distribution of heroin resulting in death and serious bodily injury. ECF No. 1. Following the indictment, Fisher proceeded to trial, but Sanders entered into a plea deal with the Government. ECF No. 6 in 3:15-CR-49.[4] On May 17, 2016, Fisher's trial began, and the following day the jury returned with a verdict of guilty. During Fisher's trial, sufficient evidence was presented indicating that Joshua Welch died in the Northern District of West Virginia. Additionally, sufficient circumstantial evidence was presented indicating that Fisher distributed heroin to Sanders outside of the Northern District of West Virginia, in Maryland. The location where Sanders distributed heroin to Welch, however, was less clear. No eyewitnesses to the June 20, 2014 distribution testified during trial.[5] Thus, evidence demonstrating where the heroin distribution from Sanders to Welch took place is limited. Nevertheless, the Government presented enough circumstantial evidence for a reasonable jury to find that Sanders distributed the heroin to Welch in the Northern District of West Virginia. And, because Fisher aided and abetted Sanders in the distribution, Fisher may be prosecuted,

---

[4] On November 23, 2015, the Government filed an information as to John Sanders in Criminal Action No. 3:15-CR-49. The information charged Sanders with aiding and abetting the distribution of heroin. The plea agreement that Sanders entered into with the Government provided, in relevant part, that he would plead guilty to the information and, at final disposition, the Government would move to dismiss the indictment against him in Criminal Action No. 3:15-CR-18-2. ECF No. 6 at 1-2 in 3:15-CR-49. On November 30, 2015, Sanders entered his guilty plea before United States Magistrate Judge Robert W. Trumble. ECF No. 10 in 3:15-CR-49. On June 20, 2016, following Fisher's jury trial, Sanders was sentenced before this Court and the indictment against him in Criminal Action No. 3:15-CR-18-2 was dismissed. ECF No. 20 in 3:15-CR-49.

[5] Fisher did not testify during his trial and codefendant Sanders, who entered a guilty plea prior to Fisher's trial, was not called as a witness.

7

and convicted, in the district in which Sanders acted in furtherance of the substantive crime. See Kibler, 667 F.2d at 455.

The Government's theory of the case was that Sanders and Welch left West Virginia and traveled to Maryland to obtain heroin from Fisher. Afterward, Sanders and Welch came back to Crystal Shank's apartment in Martinsburg, West Virginia, to use the heroin and, as a result of using the heroin, Welch died. To corroborate this theory, the Government produced Welch's cell phone records, which indicated that Sanders was using Welch's phone to communicate with Fisher about "math" and "slices" on the night of June 20, 2014—just hours before Welch's death. Govt.'s Ex. 1b at 152-53. During the time that Sanders was texting Fisher, Sanders and Welch met Heinbaugh at a Taco Bell in Hagerstown, Maryland. See Tr. Vol. II at 8:20-11:2; Govt.'s Ex. 1b at 152-53. Cell phone records indicate, and Heinbaugh's testimony supports, that Sanders texted Heinbaugh from Welch's phone, "Where u at? Wanna meet me in the bathroom of taco," at 10:16 p.m. on November 20, 2014. Govt.'s Ex. 1b at 153. Following that text message, Sanders and Welch met Heinbaugh at the Hagerstown Taco Bell and Heinbaugh gave Sanders $140.00 for cocaine. Tr. Vol. II at 10:2-11:10. However, Heinbaugh never received any cocaine from Sanders. See Tr. Vol. II at 8:20-9:5, 11:8-12.

At 10:18 p.m., two minutes after he asked Heinbaugh if he wanted to meet at Taco Bell, Sanders texted Fisher, "Math is 3 now lol my bad." Govt.'s Ex. 1b at 153. Sanders texted Fisher again at 10:29 and said, "Disregard the last text only 2 slices," and at 10:30, Fisher responded, "K." Govt.'s Ex. 1b at 153. At 10:39, Sanders texted Fisher, "Im bouta be there," and at 10:44, he said, "Pullin into hotel now." Govt.'s Ex. 1b at 153. Based upon the testimony provided by Patrolman Hose about "slices" and "math," it is

8

reasonable to infer that Sanders was texting Fisher to buy heroin. See Tr. Vol. I at 225:9-226:7. And, based upon Heinbaugh's testimony, after purchasing heroin from Fisher, it is just as likely that Sanders and Welch used the heroin in Martinsburg, West Virginia, as it is that the two used the heroin in Maryland. See Tr. Vol. II at 7:14-24.[6] It was therefore reasonable for the jury to conclude, by a preponderance of the evidence, that Sanders distributed the heroin to Welch in the Northern District of West Virginia rather than Maryland.

Although the Government offered no direct evidence of venue, the circumstantial evidence presented was enough to prove, by a preponderance of the evidence, that on June 20, 2014, in the Northern District of West Virginia, Sanders distributed to Welch the heroin that he purchased from Fisher earlier that same day. Welch then used that heroin and, as a result of that use, he died. Because Fisher aided and abetted Sanders in the distribution, he may be prosecuted, and convicted, in the district in which Sanders acted in furtherance of the substantive crime. See Kibler, 667 F.2d at 455. Therefore, Fisher's prosecution in the Northern District of West Virginia was proper.

---

[6] During the Government's direct examination of Heinbaugh, the following exchange took place:

> Q: And after you would purchase the heroin, what would you do?
>
> A: Sometimes right in the car, we would get it ready. Get it—put it in a spoon, heat it up, do all that, draw it up, and shoot it right there.
>
> Q: And other times?
>
> A: We'd sometimes go back to the house and do the same thing, if it was a short distance.

Tr. Vol. II at 7:17-24 (referencing his drug use with Sanders).

9

## IV. Conclusion

As demonstrated above, this is neither a case where the Government's failure to present sufficient evidence of venue is clear, see Beidler, 110 F.3d at 1067 (citation omitted), nor a case in which the evidence "weighs heavily against the verdict," see Arrington, 757 F.2d at 1486 (citation omitted). Therefore, the jury's verdict must stand.

Accordingly, the Court **ORDERS** that Defendant Fisher's Motion for Post-Verdict Judgment of Acquittal [ECF No. 149] and Motion for New Trial [ECF No. 150] are hereby **DENIED**.

The Clerk is **DIRECTED** to transmit copies of this Order to all counsel of record herein.

**DATED:** September 9, 2016

GINA M. GROH
CHIEF UNITED STATES DISTRICT JUDGE